UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**TAMMY DEE TAYLOR-WALTON,**

        Plaintiff,           CIVIL ACTION NO. 15-12419

    v.

**COMMISSIONER OF**          MAGISTRATE JUDGE MONA K. MAJZOUB
**SOCIAL SECURITY,**

        Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [21] AND GRANTING DEFENDANTS'S MOTION FOR SUMMARY JUDGMENT [22]**

Plaintiff Tammy Dee Taylor-Walton seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to Social Security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 21) and Defendant's Motion for Summary Judgment (docket no. 22). With consent of the parties, this case has been referred to the undersigned for final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Docket no. 18.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and is now ready to rule.

**I.      PROCEDURAL HISTORY**

Plaintiff protectively filed applications for a period of disability and disability insurance benefits on August 9, 2012, alleging that she has been disabled since April 2, 2010, due to her physical and mental impairments. (TR 26, 135-41.) The Social Security Administration denied

Plaintiff's claims on November 8, 2012, and Plaintiff requested a *de novo* hearing. (TR 92, 99-100.) On December 13, 2013, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Ramona Fernandez. (TR 42-77.) In a January 31, 2014 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 37.) The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court. (Docket nos. 21, 22.)

## II. HEARING TESTIMONY AND MEDICAL EVIDENCE

In her brief, Plaintiff sets forth a short summary of the procedural history of this matter and highlights a few points from the medical record. (Docket no. 21 at 2-3.) Defendant (docket no. 22 at 6-10) and the ALJ (TR 31-36) each set out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony. Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, the undersigned incorporates the factual recitations by reference. Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015; that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 2, 2010; and that Plaintiff suffered from the following severe impairments: headaches, osteoarthritis, hypertension, chronic pulmonary disease (COPD), non-insulin dependent diabetes mellitus, obesity, depression, and anxiety. (TR 28.) Next, the

ALJ found that Plaintiff's impairments, either individually or when combined, did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 28-30.) The ALJ then found that Plaintiff's allegations regarding the extent of her symptoms were not "entirely credible" and that Plaintiff had the following Residual Functional Capacity (RFC):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), with the following limitations: the claimant can stand and/or walk for no more than six hours of an eight-hour workday. She can lift no more than twenty pounds occasionally and ten pounds frequently. The claimant can never climb ladders, ropes, or scaffolds, and can only occasionally stoop, kneel, crawl, balance, or climb ramps or stairs. She must be able to change positions after sitting or standing for twenty minutes. The claimant can frequently (but not constantly) handle, finger, and grip. She must avoid concentrated exposure to fumes or other respiratory irritants, as well as work at unprotected heights. The claimant is limited to unskilled work with simple instructions; no more than routine changes; only occasional contact with supervisors; and only brief or superficial interaction with coworkers or the public.

(TR 30.) Subsequently, in reliance on the testimony of the Vocational Expert (VE), the ALJ determined that Plaintiff was capable of performing a number of jobs in the national economy. (TR 37.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from April 2, 2010, through the date of the decision. (TR 38.)

## IV. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the Court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past

4

work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).

  **C. Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). The court can only "reverse the [ALJ's] decision and award benefits . . . if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176.

Plaintiff asserts that this matter should be reversed and remanded for an award of benefits, or in the alternative for further development of the record under sentence four because: (1) "[t]he Administrative Law Judge had no basis" for giving Plaintiff's treating physician's opinions "little weight;" (2) the ALJ erred in relying on Plaintiff's "GAF" (Global Assessment of Functioning) score; (3) the ALJ also erred in relying on the fact Plaintiff completed online college classes; and (4) the "ALJ's conclusion the claimant was employable because she told a counselor she wanted to attend school on a full time basis is erroneous."[1] (Docket no. 21 at 5-6.)

### 1. *The ALJ's Assessment of Plaintiff's Treating Physician's Opinions*

An ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of*

---

[1] Plaintiff also states, without further argument, that "[t]he Administrative Law Judge improperly evaluated Plaintiff's credibility." (Docket no. 21 at 4.) The extent of Plaintiff's "argument" on this issue is a citation to Social Security Ruling 96-7p, which is applicable to credibility determinations made prior to the issuance of SSR 16-3p, and a recitation of the two steps involved in a credibility analysis. (Docket no. 21 at 4-5.) "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation and internal quotation marks omitted).

*Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

Plaintiff's long time treating physician is Dr. Ali A. Fadel, M.D. (TR 32.) Dr. Fadel provided a number of "disability claim forms" to Plaintiff, indicating that Plaintiff was unable to

work at various points from April 2010 through June 2011. (TR 229-32.) Regarding these opinions, the ALJ stated:

> Although Dr. Fadel is a long-time treating source, little weight is given to his opinions that the claimant was disabled from April 2010 through June 2011. The claimant requested excusal from work due to stress. Dr. Fadel's treatment records do not support his opinion that the claimant's impairments were severe enough to render her unable to work. There are no tests or lab work supporting the alleged severity of the claimant's impairments. The claimant was not receiving any mental health treatment for depression. Dr. Fadel stated in December 2010 that the claimant would likely be unable to work for a year, but he cleared her to return to work in April 2011. It was noted in March 2011 that the claimant was independent in her activities of daily living.

(TR 32.) Plaintiff does not dispute any of these findings, but argues that the ALJ nevertheless erred by relying on "the lack of diagnostic testing." (Docket no. 21 at 4.) Plaintiff argues that Dr. Fadel "is in the best position to decide her present condition," because Dr. Fadel "treated Plaintiff regularly, prescribed her medications, and referred her to a specialist for further evaluation of her depression and COPD." (*Id.*)

The ALJ did not err in relying on, among other reasons, the "lack of tests or lab work supporting the alleged severity of the claimant's impairments." (TR 32.) To the contrary, it is well-settled that the Commissioner "is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993) (citation omitted); *see also* 20 C.F.R. 404.1527(c)(2). Plaintiff does not point to any specific medical evidence in Dr. Fadel's treatment records, or any other medical records, which would support his opinion regarding the severity of Plaintiff's symptoms. Near the end of her decision, the ALJ specifically notes that there are no "images" to support Plaintiff's allegations of knee and back pain, that the evidence shows her carpal tunnel syndrome is "mild" and that she had no

8

neurological abnormalities, and that her headaches and dizziness were controlled by medication. (TR 36.)

Moreover, it is clear that the lack of diagnostic evidence was not the only relevant point in the ALJ's analysis regarding the weight of Dr. Fadel's opinion. The ALJ also relied on the inconsistencies in Dr. Fadel's "diagnoses" of disability. On December 22, 2010, Dr. Fadel stated in one of the "disability forms," that Plaintiff could be released to work on January 1, 2011. Just eight days after giving that opinion, on December 30, 2010, Dr. Fadel indicated in a letter that Plaintiff would be unable to work for at least one year, if not permanently. (TR 228.) Then, in April 2011, Dr. Fadel released Plaintiff to work. (TR 232.) The ALJ also noted that, while Plaintiff requested excusal from work due to her stress, she was not receiving any mental health treatment at the time. (TR 32.)

Finally, the undersigned notes that it is well-settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r of Soc. Sec.*, 283 Fed. App'x 336, 341 (6th Cir. 2008). Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)).

In addition to the disability claims forms, Dr. Fadel also completed a State of Michigan Department of Human Services "Medical Needs" form. (TR 492-93.) Regarding this form, the ALJ stated:

> Dr. Fadel completed a Michigan Department of Human Services medical needs form in September 2013 (Exhibit 12F). He gave diagnoses of hypertension, asthma, COPD, dizziness, and chronic lumbago. He opined that the claimant needed someone to transport her to medical appointments, and assist her with shopping, laundry, and household chores. Dr. Fadel opined that the claimant

9

could not work at her usual occupation or any job, and noted "12 months" next to the question.

Some weight is given to Dr. Fadel's statements. The claimant did testify that she needs help with laundry and housework. However, the treatment records reflect only mild carpal tunnel syndrome, and there are no images reflect[ing] any back or knee abnormalities. Her cardiac workup was normal. While the claimant may need some assistance with her household chores, the record does not support the opinion that her impairments are severe enough to render her incapable of any work. Her alleged musculoskeletal pain, dizziness, and breathing difficulties are accounted for in the residual functional capacity.

(TR 34.) Plaintiff claims that the ALJ did not give "good reasons" for discounting Dr. Fadel's opinion. (Docket no. 21 at 5.) This argument fails for essentially the same reasons stated above. Plaintiff does not identify any evidence in the record supporting Dr. Fadel's opinion regarding the severity of Plaintiff's medical conditions. It is clear that the ALJ considered the length of Plaintiff's relationship with Dr. Fadel (*see* TR 32 "[a]lthough Dr. Fadel is a long-time treating source"), but found that factor outweighed by the fact that Dr. Fadel's opinions were not supported and were not consistent with Plaintiff's medical record.

The undersigned concludes that the ALJ's decision to give little weight to Dr. Fadel's opinions in the disability forms, and her decision to give some weight to Dr. Fadel's statements in the Michigan DHS form, are both supported by substantial evidence and do not violate the "treating physician rule."

### 2. *Plaintiff's remaining arguments*

Plaintiff also argues that the ALJ erred in formulating Plaintiff's RFC because the ALJ relied on 1) two Global Assessment of Functioning (GAF) scores; 2) the fact that Plaintiff completed five online college classes in a six-month period; and 3) the fact that Plaintiff informed a counselor that she wanted to attend school full time. (Docket no. 21 at 5-6.) Plaintiff's arguments fail.

First, the ALJ thoroughly discussed Plaintiff's medical record, and it is clear from the ALJ's discussion that her decision is not based entirely on Plaintiff's GAF scores and educational achievements/goals. For example, the ALJ discusses how an electromyography revealed only "mild" carpal tunnel syndrome, and an electroencephalogram, conducted after Plaintiff's complaints of dizziness and headaches, "was normal in wakefulness and sleep." (TR 34.) The ALJ further discusses how Plaintiff's "allegations of back and knee pain are not supported by any images," and her "cardiac and neurological workups did not reveal any significant abnormalities." (TR 36.) The ALJ also points out that Plaintiff was prescribed physical therapy in late 2011, but that Plaintiff provided no records showing any treatment by a physical therapist beyond an initial evaluation. (TR 33.) Plaintiff does not dispute any of these findings.

As for Plaintiff's mental health records, the ALJ discussed how Plaintiff's treating psychiatrist, Dr. Phillip Parker, M.D., prescribed Zoloft, and how Plaintiff's discussions with her counselor "revolved around family and relationship issues." (TR 35.) The ALJ also discussed Plaintiff's mental consultative examination, noting the examiner's description of Plaintiff as sitting "with her head in her hands and her eyes closed for most of the session," but also noting that Plaintiff reported to the examiner that she "takes her children to school, goes on appointments and errands, picks her children up from school, . . . is able to independently care for her hygiene and grooming needs, cook, do laundry once a month, . . . and is able to independently manage her financial matters." (TR 35; 402.) The ALJ also notes that Plaintiff had a gap in mental health treatment between July and October 2013.

Finally, the ALJ discussed inconsistencies between Plaintiff's testimony and her medical records. For example, the ALJ notes Plaintiff's testimony that she only smoked marijuana "a

11

couple of years ago, to celebrate a birthday," but that Dr. Parker diagnosed Plaintiff with "cannabis dependence" in April 2013. (TR 31, 35.) The ALJ also points out Plaintiff's inconsistent testimony regarding Plaintiff's efforts to find work since 2010; at first, Plaintiff claimed that she did not look for work due to her carpal tunnel syndrome symptoms, but she later admitted that she did look for work in 2012 while she was collecting unemployment benefits. (TR 31.)

Moreover, the ALJ did not err by relying on the GAF scores and Plaintiff's educational history and future goals. Dr. Parker assigned Plaintiff a GAF score of 50 in May 2013, which took into consideration the fact that Plaintiff had economic and housing problems. (TR 501.) State disability examiner Terrance A. Mills, Ph.D., a licensed psychologist, also assigned a GAF score of 50. (TR 403.) Without disputing the accuracy of the scores or pointing to contradictory evidence, Plaintiff simply argues that a GAF score "is nothing more than a subjective determination that represents the clinician's judgment of the individual[']s functioning. It is not medical evidence and should not [be] a substitute for medical evidence." (Docket no. 21 at 5.) As the ALJ points out, the Sixth Circuit has relied on GAF scores, and specifically stated that a GAF score "in the high 40s to mid 50s . . . would not preclude [a person] from having the mental capacity to hold at least some jobs in the national economy." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007).

Regarding Plaintiff's education, the ALJ stated that the "ability to attend school part-time and desire to attend fulltime are inconsistent with the claimant's allegations of disabling mental and physical impairments." (TR 36.) Plaintiff argues that her ability to complete the online classes has "no correlation" with "one[']s ability to concentrate, and function in a normal work environment," because Plaintiff was not required to follow a "schedule with deadlines," in her

12

online classes. Regardless of the specific nature of the coursework, the record supports the ALJ's finding that Plaintiff did complete five classes in a six-month period. Moreover, the ALJ specifically found that despite Plaintiff's ability to complete this amount of coursework, Plaintiff nevertheless had moderate difficulties in concentration, persistence, and pace, and the ALJ accounted for this limitation in formulating Plaintiff's RFC by limiting Plaintiff to "unskilled work with simple instructions; no more than routine changes; only occasional contact with supervisors; and only brief or superficial interaction with coworkers or the public." (TR 30.)

Plaintiff also argues that the ALJ's reliance on Plaintiff's desire to attend school full time is "erroneous," because "there is no testimony in the record that the Plaintiff was capable of performing or attending school on a full time basis." (Docket no. 21 at 6.) However, as the ALJ points out, Plaintiff did inform her counselor that she wanted to attend school full time. (TR 509.) She later testified that "someone" told her that she "couldn't go to school and try to get Social Security." (TR 47.) Regardless, and more importantly, it is clear from the ALJ's decision that she relied on more than Plaintiff's stated desire to attend school full-time when formulating Plaintiff's RFC.

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [21] is **DENIED**, and Defendant's Motion for Summary Judgment [22] is **GRANTED**.


Dated: March 7, 2017        s/ Mona K. Majzoub
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: March 7, 2017                    s/ Lisa C. Bartlett
                                        Case Manager